UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | File No. 23-CV-00530 (JMB/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| $61,450 in U.S. Currency, | |
| Defendant, | |
| and | |
| Ashley Clark, | |
| Claimant. | |

Craig R. Baune and Lucas B. Draisey, United States' Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Ashley Clark, St. Paul, MN, self-represented.

This matter is before the Court on Claimant Ashley Clark's Motion to Stay the Forfeiture Proceedings (Doc. No. 26) and on the Government's Motion for Default Judgment and Final Order of Forfeiture as to Defendant $61,450 in U.S. Currency (Currency). (Doc. No. 33.) For the reasons explained below, the Court denies Clark's motion, grants the Government's motion, enters a final order of forfeiture, and dismisses this action.

1

## BACKGROUND

### A.    The Government Seizes the Currency

On March 6, 2023, the Government seized the Currency, which comprises $61,450 in cash. (Doc. No. 4.) District Chief for the Saint Paul Police Department's Eastern District Commander Salim Omari submitted a Declaration that details the events leading up to the Currency's seizure (Doc. No 36), which is described below.

On September 28, 2019, W.B. was shot and killed outside of a bar in St. Paul in retaliation for the recent murder of another male, M.G. (Doc. No. 36 ¶ 4.) Law enforcement officers investigating the shooting reviewed surveillance video and identified John Sheldon Pickens, Jr., as a person of interest. (*Id.*) Specifically, law enforcement officers came to believe that Pickens, a known associate of M.G., called the shooter to advise him of W.B.'s location. (*Id.*; Doc. No. 36-2 at 4, 5.)

Law enforcement began surveilling Pickens and learned that he had an outstanding arrest warrant for a misdemeanor offense. (Doc. No. 36 ¶ 6; Doc. No. 36-2 at 5–6.) On October 7, 2019, law enforcement officers arrested Pickens on the warrant and were able to confirm that he possessed certain devices for which law enforcement officers had previously obtained tracking devices. (Doc. No. 36 ¶ 8.) Law enforcement officers also conducted forensic examinations of his devices, during which they recovered a photo of Pickens sitting on a counter with "what appeared to be two kilos of narcotics" and a scale "commonly used to measure narcotics." (*Id.* ¶ 9; Doc. No. 36-1.) This led Commander Omari to believe that Pickens "was involved in narcotic trafficking." (Doc. No. 36 ¶ 9.)

Commander Omari continued to monitor Pickens's movements via tracking devices on his phones. (*Id.* ¶¶ 10–11.) He observed that, on October 13, 2019, Pickens traveled to and stayed in Chicago for less than twenty-four hours. (*Id.*) Then, on November 1, 2019, Commander Omari observed that Pickens was again en route back to St. Paul after another very short trip to Chicago, which led him to believe that Pickens "was likely transporting illegal narcotics." (*Id.* ¶ 12.)

As Commander Omari continued to monitor Pickens's location, he communicated with officers along Pickens's route, who attempted to stop him. (*Id.* ¶¶ 13–15.) Pickens fled. (*Id.* ¶ 15.) After his vehicle crashed, law enforcement officers arrested Pickens and found thirteen pounds of cocaine in the vehicle. (*Id.*) *See United States v. Pickens*, 58 F.4th 983, 984–85 (8th Cir. 2023).

That afternoon, law enforcement officers applied for, obtained, and then executed a search warrant at Pickens's St. Paul residence. (*Id.* ¶¶ 16–17.) When law enforcement officers arrived at the residence to execute the warrant, Clark answered the door with an infant. (*Id.* ¶ 17.) Clark told officers that Pickens was the infant's father, but that Pickens did not spend much time at the residence. (*Id.* ¶ 18.) While searching the residence, officers "located evidence in connection with Pickens and his suspected drug activity." (*Id.* ¶ 19.) Such items included $58,000 in currency in plastic bags in a bedroom (in which bedroom officers also located a citation issued to Pickens on October 7, 2019), a shoulder bag containing three firearms and ammunition in an entryway closet, and $3,050 in rubber-banded stacks in the kitchen. (*Id.* ¶¶ 21–24; *see also* Doc. No. 36-3.) Clark told officers

that the firearms did not belong to her and that she had no knowledge of the packaged cash that had been found. (Doc. No. 36 ¶ 25.)

Pickens was indicted with one Count of Possession with Intent to Distribute cocaine in an amount greater than five kilograms. *United States v. Pickens*, No. 19-CR-00314 (ADM/BRT), Doc. No. 1 (D. Minn. Dec. 5, 2019). On June 24, 2021, a jury convicted him. *Id.*, Doc. No. 90. On January 15, 2023, the Eighth Circuit Court of Appeals affirmed the district court's denial of a post-verdict motion for judgment of acquittal and for a new trial. *Pickens*, 58 F.4th 983.

Shortly thereafter, on March 6, 2023, the Government filed the Complaint for Forfeiture *In Rem* in this action and the Currency was seized. (Doc. Nos. 1, 4.)

B.  **Clark Files a Claim to the Currency**

On April 18, 2023, Clark filed a claim to the entire amount of the seized Currency. (Doc. No. 6.) In a sworn affidavit attached to her claim statement to explain her interest in the Currency, Clark represented that she had "save[d] a significant amount of money" by earning tips while working on cruise ships since 2004. (Doc. No. 6 at 6 ¶ 3.) She further represented that she had been saving the money she earned through this work, and that she "kept the money in cash because [she] wanted to avoid any risk the government would seize or freeze [her] finances." (*Id.* ¶ 4.)

In July 2023, the Government served Interrogatories and Requests for Production of Documents on Clark's former counsel. (Doc. Nos. 35-1, 35-2.) Clark's counsel served untimely and, in the Government's view, deficient responses to both. (Doc. No. 35 ¶¶ 9–11.) On account of the parties' good-faith attempts to resolve the discovery deficiencies,

4

the Magistrate Judge extended the discovery cut-off from 2023 to January 2024. (*Id.* ¶¶ 11–13; Doc. No. 17.) After communicating with counsel about Clark's availability for a deposition before the discovery cut-off, the Government noticed the deposition for mid-January; however, the parties later decided to postpone it. (*Id.* ¶¶ 14–18.) The discovery cut-off was again extended and was set for late March 2024. (Doc. No. 21; *see also* Doc. No. 19.)

The Government's and Clark's counsel then agreed that Clark's deposition would be rescheduled to March 14, 2024. (Doc. No. 35 ¶¶ 23–25; Doc. No. 35-9.) The Government served notice accordingly. (Doc. No. 35 ¶ 25; Doc. No. 35-10.) On March 14, 2024, counsel for the Government attended Clark's deposition even though he had not yet received the promised supplemental responses to the Government's original July 2023 discovery requests. (Doc. No. 35 ¶ 27.) Clark's counsel appeared for the deposition, but Clark did not. (*Id.* ¶ 28; Doc. No. 35-11.)

Clark's counsel thereafter filed a motion to withdraw—which was granted—on grounds that his client has "failed to meaningfully participate in the matter and communicate with counsel, which has rendered counsel unable to litigate this action." (Doc. No. 22 at 1; *see also* Doc. No. 23.) Following an informal conference between counsel and the Magistrate Judge in April 2024, the Magistrate Judge entered an Order that required Clark to: (1) appear for a deposition within 30 days; and (2) serve complete supplemental answers to the Government's discovery requests. (Doc. No. 25 ¶¶ 1, 2.) The Magistrate Judge also warned that "[f]ailure to comply with this order may result in

5

sanctions against [her] under Fed. R. Civ. P. 37(b)(2)(A)(ii) and 37(d), up to and including default judgment." (*Id.* ¶ 4.)

Thereafter, the Government served Clark with an amended notice of deposition by mail to two addresses,[1] which set the second deposition for May 14, 2024. (Doc. No. 35 ¶¶ 35, 37; Doc. No. 35-13.) Clark did not ever supplement her discovery responses, as ordered. (Doc. No. 35 ¶ 38.) Clark also did not appear at the May 14 deposition. (*Id.* ¶ 39; Doc. No. 35-14.)

## DISCUSSION

**I.     CLARK'S MOTION TO STAY THE PROCEEDINGS**

The Court first addresses Clark's motion, which she has styled as a "Motion to Stay Forfeiture Proceedings and Motion for Return of All Unlawfully Seized Private Property By Affidavit." (Doc. No. 26.) In that submission, Clark argues that "Well-Established Proffered; Historical; Textual; Biblical; Constitutional; and Adjudicated Facts, Laws, Authorities, Treaties; Precedence; and Stare Decisis" require the Court to conclude that the Currency was unlawfully seized when law enforcement tracked Pickens in violation of the Fourth, Fifth, and Fourteenth Amendments of "the Treaty" (i.e., the U.S. Constitution)." (*Id.* at 3–8.) The Court has carefully reviewed Clark's submission and construes it primarily as a motion to suppress evidence under the Fourth Amendment to the U.S. Constitution.

---

[1] One of the two of the mailed notices was returned undelivered. (Doc. No. 35 ¶ 37.)

The Fourth Amendment applies in civil forfeiture proceedings. 18 U.S.C. § 981(b)(2)(B); *One 1958 Plymouth Sedan v. Commonwealth of Penn.*, 380 U.S. 693, 702 (1965). However, the rights to be free from unlawful search and seizure under the Fourth Amendment "are personal rights that may not be asserted vicariously." *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017). To have standing to assert rights under the Fourth Amendment, the person asserting them must have "a sufficiently close connection" to the object searched. *Id.* To determine whether a person has such a connection, Courts consider such factors as, among other things, the party's ownership, possession, or control over the item seized or area searched and their historical use of the property or object. *See id.* Here, Clark challenges the lawfulness of the pre-arrest tracking warrants used by law enforcement on Pickens's devices to track him. Clark has not ever argued or offered evidence showing that the devices on which the devices were used were hers, not Pickens's. Therefore, any Fourth Amendment arguments relating to law enforcement's use of tracking devices belong to Pickens, not to Clark.[2] Thus, the Court denies Clark's suppression motion.

Clark appears to make additional arguments that the Government has violated both the Fifth Amendment by engaging in an illegal taking and Fourteenth Amendment by denying her procedural due process. (Doc. No. 26 at 3–4, 7.) The Court is not convinced that such arguments, when brought by a claimant in an *in rem* forfeiture action, are properly before it. To the extent they are, both fail. The starting place of any Fifth Amendment

---

[2] Pickens did challenge the lawfulness of the tracking devices in his criminal proceedings without success. *See Pickens*, 58 F.3d 983.

takings analysis is the identification of a claimant's property right. *See Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 439 (8th Cir. 2007). Because of Clark's failure to participate in discovery in this action, *see infra* Part II, she has not demonstrated her property interest in the Currency. Further, "[f]ederal legislation in force prior to the acquisition of property may inform the expectation of compensability" for seized property. *Cal. Hous. Secs., Inc. v. United States*, 959 F.2d 955 (Fed. Cir. 1992). When the Currency was seized, 21 U.S.C. § 881(a)(6) which provides for, among other things, the forfeiture of currency linked to the drug trade, existed. When the Currency was used for illicit activities, as demonstrated by the Government, *infra* Part III, "any expectation of constitutionally mandated compensation for [its] loss was extinguished" because "[t]he possibility of civil forfeiture informed and limited [her] property interest." *Bowman v. United States*, 35 Fed. Cl. 397, 405 (Fed. Cl. 1996) (denying claimant's takings claim related to property in forfeiture action initiated under 21 U.S.C. § 881(a)(6)).

Lastly, the Government has not violated Clark's procedural due process rights under the Fourteenth Amendment. Clark has been afforded procedural due process through this judicial proceeding, in which she has seemingly willfully declined to participate, as discussed *infra* Part II.

For all of these reasons, Clark's motion is denied.

## II.  DISMISSAL OF CLARK'S CLAIM AS DISCOVERY SANCTION

The Government argues the Court should dismiss Clark's claim, with prejudice, under Federal Rule of Civil Procedure 37(d) because Clark has "fail[ed] to obey the Court's

April 15 order and refus[ed] to participate meaningfully in discovery." (Doc. No. 34 at 15–16.) For the reasons discussed below, the Court agrees.

Federal Rule of Civil Procedure 37(d) provides as follows:

> (1) *In General.*
>
> > (A) The court where the action is pending may, on motion, order sanctions if:
> >
> > > (i) a party . . . fails, after being served with proper notice, to appear for that person's deposition; or
> > >
> > > (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

Fed. R. Civ. P. 37(d)(1). The Court may, in its discretion, order a range of sanctions, including prohibiting the delinquent party from supporting or opposing certain claims or defenses, staying proceedings until the party complies, dismissing the action in whole or in part, or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i), (d)(3). The Government need not bring a motion to compel before the Court may, in its discretion, dismiss an action or claims under Rule 37(d). *Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994). However, the Eighth Circuit has warned that "Rule 37(d) should be strictly construed." *Id.*

In *Setzke v. Whitmill*, for example, the district court dismissed a self-represented plaintiff's section 1983 action under Rules 37(d) and 41(b) following his failure to appear at two scheduled depositions. 241 Fed. App'x 351, 352 (8th Cir. 2007) (per curium). The plaintiff informed defense counsel that he had received the first notice of deposition, and the court warned him that failure to appear at the second scheduled deposition could result

9

in the dismissal of his claims. *Id.* The Eighth Circuit affirmed the district court's dismissal, about which it observed "no abuse of discretion." *Id.* Further, in *Aziz v. Wright*, 34 F.3d 587 (8th Cir. 1994), the district court dismissed a self-represented incarcerated plaintiff's section 1983 claim under Rule 37(d) on grounds that he refused to be deposed in handcuffs on two occasions. *Id.* at 588–89. The Eighth Circuit affirmed the dismissal, but determined that Rule 41(b) provided a better grounds for dismissal based on the facts in the record—i.e., the plaintiff did not "fail to appear"; rather, he refused to cooperate at his deposition. *Id.* at 589.

Here, the Court has ample grounds to dismiss Clark's claim to the Currency under both Rules 37(d).[3] She has not supplemented the discovery requests that were propounded

---

[3] The Government does not expressly argue that the Court should also consider dismissal under Federal Rule of Civil Procedure 41(b) but does cite to cases such as *Setzke* and *Aziz*, in which the Eighth Circuit affirmed dismissal under Rule 41(b) for a plaintiff's non-compliance with discovery rules and orders. Rule 41(b) provides that the Court may dismiss an action or claims "[i]f the plaintiff fails to prosecute or to comply with [the Rules] or a court order." Fed. R. Civ. P. 41(b). Dismissal under Rule 41(b) may be sua sponte. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962) ("The authority of a court to dismiss sua sponte for lack of prosecution has been considered an 'inherent power.'"); *Henderson v. Renaissance Grand Hotel*, 267 F. App'x 496, 497 (8th Cir. 2008) (per curium) (same). The Court observes that it could dismiss Clark's claim under Rule 41(b) here; however, the Court is concerned that there is mixed authority whether a Rule 41(b) dismissal is appropriate in an *in rem* forfeiture proceeding. *Compare United States v. $506,069.09 Seized from First Merit Bank*, 664 Fed. App'x 422 (6th Cir. 2016) (affirming district court's sua sponte dismissal of claimant's claim under Fed. R. Civ. P. 41(b) in civil forfeiture action due to claimant's failure to prosecute claim); *U.S. v. Approximately $189,040.00 in U.S. Currency*, No. 2:13-CV-0643 (JAM/KJN), 2013 WL 4714177, at *2 (E.D. Cal. Aug. 9, 2013) (concluding that Rule 41(b) "logically appl[ies]" in context of in rem civil forfeiture proceeding); *Dosunmu v. U.S.*, 361 F. Supp. 2d 93, 99-102 (E.D.N.Y. 2005) (dismissing claims in forfeiture action under Rule 41(b) where claimants "utterly ignored their obligations with respect to discovery" and did not comply with court orders), *with U.S. v. U.S. Currency in Amount of Six Hundred Thousand Three Hundred and Forty One Dollars and No Cents ($600,341.00) in United States Currency*, 240 F.R.D. 59, 62-63

10

by the Government nearly one year ago and she failed to appear at two scheduled and properly noticed depositions. In doing so, Clark has violated the Magistrate Judge's April 15 Order (Doc. No. 25), which warned her of the consequences of further non-compliance with the discovery process. The discovery deadline, which the Court extended twice, lapsed four months ago. The Court dismisses Clark's claim.

### III.   REQUEST FOR FINAL ORDER OF FORFEITURE

Finally, the Government seeks summary judgment on the merits of its *in rem* claim under 21 U.S.C. § 881(a)(6) and asks the Court to enter a final order of forfeiture. (Doc. No. 34 at 34.) For the reasons discussed below, the Court grants the Government's motion.

Under 21 U.S.C. § 881, "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance" and "all proceeds traceable to such an exchange" "shall be subject to forfeiture to the United States and no property right shall exist in them. *Id.* § 881(a)(6). To prevail in this forfeiture action, the Government must prove "a substantial connection between the seized currency and drug activity." *United States v. $63,530.00 in U.S. Currency*, 781 F.3d 949, 955 (8th Cir. 2015). This substantial connection is determined by the totality of the circumstances and is a question of both law and fact. *Id.*; *U.S. v. $124,700 in U.S. Currency*, 458 F.3d 822, 825 (8th Cir. 2006).

The Government has shown a substantial connection between the Currency and drug activity based on the totality of these circumstances: (1) Pickens took short trips to

---

(E.D.N.Y. Mar. 5, 2007) (dismissing claimant's claim in civil forfeiture proceeding for failure to comply with discovery orders under Rule 37 but declining to dismiss under Rule 41(b) where the court "has found virtually no legal or scholarly authority on th[e] question" whether the rule applies in in rem forfeiture proceedings).

11

Chicago; (2) while returning to Minnesota from one such trip, Pickens fled from but was later intercepted by law enforcement and found to be transporting approximately thirteen pounds of cocaine in his vehicle; (3) Pickens had a photograph on his phone of himself with two kilos of narcotics on a scale; (4) the lack of evidence that adults other than Clark and Pickens resided in the residence in which the Currency was found; (5) on the day the Currency was discovered by law enforcement, Clark denied knowledge or ownership of it; (6) the sum of the Currency discovered was large; (7) the Currency was stored in rubber-banded rolls; (8) firearms and scales (i.e., evidence of drug distribution) were also discovered in the residence; (9) Clark had not worked for the last six months before the seizure of the Currency; (10) Clark did have bank accounts but had not deposited the Currency in them. *See United States v. $63,500.00 in U.S. Currency*, 781 F.3d 949, 955–56 (8th Cir. 2015) (observing that "[p]ossession of large amounts of currency," "the particular packaging of the currency," and providing conflicting statements to law enforcement about currency supported finding of substantial connection to illegal activity); *United States v. $117,920.00 in U.S. Currency*, 413 F.3d 826, 829 (8th Cir. 2005) (holding that possession of large amount of currency bundled in rubber bands and enclosed in plastic bag inside of duffel bag showed substantial connection to drug activity). *Cf. United States v. Brown*, 921 F.2d 785, 792 (8th Cir. 1990) (observing that "a firearm . . . is generally considered a tool of the trade in drug dealing).

Based on the totality of these circumstances, the Government has shown a substantial connection between the Currency and drug activity, and the Court will enter a final judgment of forfeiture in its favor.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Claimant Ashley Clark's motion to stay the proceedings (Doc. No. 26) is DENIED.

2. The Government's motion for a procedural default on Clark's claim to the Defendant and for a default judgment and final order of forfeiture (Doc. No. 33) is GRANTED.

    a. The Government's motion for a default judgment against all other persons and entities having interest in the Defendant Property for failure to file a claim to the Defendant Property and an answer to the Verified Complaint for Forfeiture *In Rem* as required by Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

    b. The Currency is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6) for disposition in accordance with law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 7, 2024               /s/ *Jeffrey M. Bryan*
                                     Judge Jeffrey M. Bryan
                                     United States District Court